154 So.2d 340 (1963)
Charles Wallace DAY, Appellant,
v.
STATE of Florida, Appellee.
No. 3338.
District Court of Appeal of Florida. Second District.
June 12, 1963.
Charles J. Cullom, Orlando, for appellant.
Richard W. Ervin, Atty. Gen., A.G. Spicola, Jr., Sp. Asst. Atty. Gen., Tallahassee, for appellee.
KANNER, Acting Chief Judge.
Defendant, appellant, Charles W. Day, under the second count of a two count information, was convicted by the jury of manslaughter through culpable negligence in operating an automobile, resulting in the death of Robert J. Barnes. The jury acquitted appellant as to the first count, manslaughter *341 in the operation of an automobile while intoxicated. The appeal is from the judgment of conviction under the second count. The primary question to which this court will direct its consideration is sufficiency of the evidence to support appellant's conviction.
There were no eyewitnesses; appellant himself testified that he "blacked out" prior to the fatal impact. He insists that there is no evidence of the degree of culpability required for his conviction but only evidence which points to a situation where circumstances impelled the acts leading to the death of his friend. The state takes the position that, from the guilty verdict, little or no weight was given by the jury to appellant's narrative of those circumstances and that the verdict of guilty is supported by the evidence.
The accident occurred about one mile from the community of Pine Castle. The investigating officer was the first of the state's witnesses. He related that he was called to the scene at about 1:04 on the morning in question and proceeded to Hoffman Avenue which runs from South Orange at Pine Castle in a general easterly direction from Orange Avenue. He found scattered wreckage of appellant's automobile, with the vehicle itself resting against a thicket on the south side of the road. The night was clear. The ground on the south shoulder of the highway was churned and rutted, beginning at the wrecked automobile and following a curved course approximately to a scarred fireplug. Tire tracks left the road to the west of the fireplug, distant from it 106 feet. The wrecked automobile was 428 feet away from the beginning of those tracks; a scarred palm tree was 304 feet away; a damaged utility pole about 330 feet. Near the damaged utility pole was the right-hand door of appellant's automobile, bent in a U-shape. Deceased's body was lying on the south edge of the road about 334 feet from the point where the tire tracks left the road. The officer conducted his investigation with the aid of a flashlight and lights of the car. Leading away from the automobile, beginning approximately at the fireplug, the road was well churned up; tracks were hard to distinguish there but easily distinguished west of the fireplug, a distance of 106 feet along which "the tracks continued on as tracks." No tire tread impressions nor photographs were made, because these were not distinguishable. No measurements of the tire imprints were offered, and no photographs were made of the tracks themselves in that area. The investigating officer saw no other tracks but believed these were made by appellant's car, judging from the indications mentioned.
One state witness who resided in the immediate neighborhood heard the sound of tires, then almost simultaneously the noise of an impact, rushed to the scene, and observed appellant emerging from his wrecked car and proceeding toward the body of his companion. Appellant told that witness that he had been driving the car. Another had seen passing his house a car of the make and description of appellant's, traveling "fast" but "traveling straight on the road at the time." He resided about a quarter of a mile from the point of the accident. That witness would not estimate the speed but stated during the course of direct examination that there elapsed about three quarters of a minute to a minute between the time the vehicle passed and the time he heard the sounds of the wreck. The last neighborhood witness testifying for the state related that the sound of tires and the sound of the crash came one right after the other. Persons residing in the vicinity of the accident who testified told of a noise of tires or brakes prior to the sound of impact.
The bar employees who were state's witnesses related that appellant had been drinking on the day and evening preceding the wreck; all stated that his actions, speech, and manner of walking were normal and his demeanor quiet and well-mannered. A state trooper present at the scene of the accident said that, following the wreck, appellant was swaying and staggering and had *342 a very strong odor of alcoholic beverages about him. There was medical testimony that the chemical analysis of appellant's blood, a specimen for which was taken between 3:30 and 3:45 a.m., showed a .27 blood alcohol reading, the level of intoxication being .15. The medical testimony indicated, however, that the point at which one is considered to be intoxicated or under the influence of alcohol varies with individuals, depending on the body size, activities of the person, metabolism, and many factors.
Appellant's narrative indicated that he, with decedent, went to the bar in question during the day and evening of the accident and that he had consumed several highballs from 11 a.m. until shortly before midnight, two of these between 11 and 12 p.m. Shortly before midnight, the two men left the bar and departed in appellant's car. Driving along a paved macadam road at a speed of around 45 to 50 miles per hour, appellant slowed to a near halt at a point which had been under construction. Arriving at the radius of a curve a short distance further, he saw another automobile coming toward him at a rapid rate of speed and traveling on the wrong side of the road, or in the same lane as appellant. Deceased yelled to appellant to get off the road; he did so to avoid a head-on collision, accelerating the car, and shortly thereafter hit a white sand dirt road to the north of a fireplug. He did not leave the road before reaching the fireplug, but just beyond it, at the radius of the curve. After going onto the shoulder, the car started "acting up," struck sand, bounced about, then pulled back onto firm ground. Appellant lost consciousness at about that time but did remember hitting a palm tree, at which point deceased was still with him. Appellant had experienced no previous blackout episodes and did not know why he lost consciousness but stated that his head must have hit something. There was approximately one inch of space between the top of his head and the top of the car; and there were bumps and contusions on his head after the accident. His first recollection was crawling out of the wrecked vehicle, whereupon he walked over to deceased and knelt to take his pulse.
A woman whose home was directly across the street from the accident site, hearing the sound of "squealing wheels," went to see if help were needed. She testified that there was no difference in the condition of the road and its shoulder before and after the accident, explaining that road crew caterpillars, utility company tool buggies, and vehicles used in care of groves along the roadside had caused a marring and scarring and deep rutting of the shoulder. The witnesses who observed appellant and decedent at the bar before the accident confirmed that of the state's witnesses who testified that appellant had been drinking but that his conduct, appearance, gait, and speech prior to the accident were normal.
In a number of cases, the supreme court has applied the rule relating to the degree of negligence required to sustain a conviction of manslaughter by culpable negligence. In its most oft repeated language, that rule prescribes that the negligence complained of must be of "a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them." Preston v. State, Fla. 1952, 56 So.2d 543; Cannon v. State, 1926, 91 Fla. 214, 107 So. 360, 363.
The state relies wholly upon circumstantial evidence to sustain the conviction; and the burden devolved upon it to prove appellant's guilt beyond every reasonable doubt. Where the evidence is entirely circumstantial, the law requires that the evidence as a whole must be so strong, cogent, and convincing as to exclude every reasonable hypothesis except that of the defendant's *343 guilt. Savage v. State, 1943, 152 Fla. 367, 374, 11 So.2d 778, 781, 782.
We are convinced that the evidence in the present case does not meet the standard of sufficiency to convict appellant of manslaughter by culpable negligence. Several Florida cases which have overthrown convictions under a similar charge because of insufficiency of the evidence are helpful by comparison. In each of these cases, the defendant, as here, was acquitted under the count of the information charging manslaughter by operation of an automobile while intoxicated but was found guilty under the count involving culpable negligence.
The defendant in the Preston v. State case, Fla. 1952, 56 So.2d 543, under the evidence adduced by the state, was traveling at a speed of 50 miles per hour. He entered an intersection in the City of Jacksonville, where the speed limit was 25 miles per hour, striking broadside the vehicle of deceased, which was being driven at a speed of between 10 and 15 miles per hour. The court commented that the jury had exonerated the accused of the count charging manslaughter through operating an automobile while intoxicated; further, that the record was silent as to traffic conditions or other hazards which would be relevant to the question of whether excessive speed was such as to constitute culpable negligence. "In a case of this kind," said the court, "where the liberty of a citizen is at stake, and where the guilt of the accused must be established beyond a reasonable doubt, a conviction should not be sustained merely upon suspicious circumstances or conjecture."
In Maxey v. State, Fla. 1953, 64 So.2d 677, there was evidence that the defendant had been drinking and that he had been traveling "pretty fast". Physical evidence outlined by the state showed that defendant had been traveling at a fast but undetermined rate of speed around a curve, lost control, skidded along the shoulder some 300 feet, then skidded 152 feet in a direction indicating that he was attempting to regain the highway and then turned over three times, resulting in the death of defendant's passenger. The court commented that the testimony, taken in the light most favorable to the state, was wholly inconclusive, neither consistent with guilt nor inconsistent with innocence.
The accident leading to conviction of the defendant in Smith v. State, Fla. 1953, 65 So.2d 303, caused the death of two pedestrians crossing a four lane highway in a rural section on a clear, dry night. Defendant, momentarily blinded by an approaching truck, tried to swerve and apply his brakes, whereupon the car seemed to go out of control so that he had to stop gradually. Testimony indicated that defendant was intoxicated, smelled of liquor, and weaved when he walked. His last recollection before the accident was that he was going 60 to 65 miles per hour. The court deemed the evidence to be insufficient.
The fatal mishap in Jackson v. State, Fla. App. 1958, 100 So.2d 839, took place at dusk as defendant, attempting to negotiate a curve, had sideswiped a truck, lost control of his vehicle, proceeded across the road and onto the left-hand shoulder, then crashed into a store building, striking deceased. There was a total lack of evidence as to where or how defendant's car struck deceased; the first witness to arrive found him lying unconscious across the engine of the automobile. Speed estimates varied from 40 to 60 miles per hour, and one witness testified that defendant was driving on the wrong side of the road. There was some evidence of alcoholic consumption on the preceding evening and on the day of the accident. It was the court's view that there was no substantial evidence upon which the jury could have predicated its verdict of guilty.
The Fowlkes v. State case, Fla.App. 1957, 100 So.2d 826, certiorari denied, 101 So.2d 819, involved a defendant who had been partying and drinking since noon on Christmas Eve, admitted that he "blacked out," and did not recall leaving the bar *344 where he had been, getting into his car, driving to the point of collision, nor anything about the accident. Testimony indicated that he had been driving down the street at dusk or early nightfall at an estimated speed of 65 to 70 miles per hour. He struck the rear of a taxicab, causing the death of its driver. There were no skid marks. One witness before whose eyes the accident occurred testified only concerning excessive speed, identified defendant and his car, but gave no account of the accident itself. Another eyewitness told only what he saw before and after the accident. Officers who investigated were able to elucidate only as to the result, not how the accident happened, and as to defendant's state of intoxication. The court found the evidence inconclusive because of absence of evidence of other circumstances which might cast light upon pertinent aspects of the accident.
Excessive speed alone is not necessarily culpable negligence sufficient to sustain a charge of manslaughter by negligent operation of an automobile. Preston v. State, Smith v. State, Jackson v. State, Fowlkes v. State, supra. Here, it cannot be said that appellant was driving at an excessive rate of speed but only that the evidence as to speed is inconclusive. Also, evidence bearing upon the subject of use of intoxicants may be considered under a charge of culpable negligence in the operation of an automobile as a factor which might shed light upon recklessness of an accused, but such evidence cannot of itself render wanton and reckless an act not otherwise so. Smith v. State and Jackson v. State, supra. The facts in the case at bar relating to use by appellant of intoxicating beverages were before the jury, and appellant was acquitted under this count.
In sum, the state has failed to establish, under the circumstantial evidence rule, beyond reasonable doubt by evidence so strong, cogent, and convincing as to exclude every reasonable hypothesis except that of appellant's guilt that his conduct was such as to show the recklessness, indifference, and disregard for human life or the safety, welfare, and rights of others essential to sustain a conviction of manslaughter by culpable negligence in operation of an automobile.
The lower court should have granted the motion for new trial. The judgment is reversed and the cause remanded.
ALLEN and WHITE, JJ., concur.