157 So.2d 553 (1963)
JOSEPH MALLORY CREWS AND CHARLES SEVERANCE, D/B/A SEVERANCE TRUCK LINES, APPELLANTS,
v.
JONATHAN PIERCE WARREN, A MINOR, BY HIS NEXT FRIEND, INELLA RHODES WARREN, AND INELLA RHODES WARREN, INDIVIDUALLY, APPELLEES.
No. E-158.
District Court of Appeal of Florida, First District.
November 5, 1963.
Rehearing Denied November 21, 1963.
*555 Howell, Kirby, Montgomery & Sands, Jacksonville, for appellants.
Cox, Grissett, MacLean & Webb, Jacksonville, for appellees.
STURGIS, Chief Judge.
The appellants, defendants below, seek reversal of final judgments entered pursuant to verdict of the jury in a negligence action brought by appellees, Jonathan Pierce Warren, a minor, and his mother, Inella Rhodes Warren. The judgments are affirmed.
Appellant Severance was the owner and appellant Crews the driver of a tractor and trailer rig, hereinafter identified as the "timber truck," involved in an accident in which the plaintiff minor suffered serious bodily injuries and his father was killed. The timber truck collided with a panel truck, hereinafter identified as the "Seaboard truck," in which the plaintiff minor was riding and which was being driven by his father. The third motor vehicle was a Mercury station wagon driven by one Jean Blackmon Wilcox, who was originally named a party defendant but was non-suited by the plaintiffs after the commencement of the trial and appeared as a witness in their behalf.
Rephrasing the points of law argued and relied on for reversal, appellants insist:
(1) That it was error to deny defendants' motion for a directed verdict made at the close of all the evidence; this point being based on the premise that the verdict is contrary to the weight and probative force of the evidence.
(2) That is was error to charge the jury with respect to the duty of the driver of a truck as related to Section 320.54, Florida Statutes 1961, F.S.A., which requires trucks to be equipped with rearview mirrors.
(3) That it was error to charge the jury with respect to the duty of drivers of motor vehicles proceeding in opposite directions on the highway, as related to Section 317.26, Florida Statutes 1961, F.S.A., which requires that they shall pass each other to the right; and upon roadways having width for not more than one line of traffic in each direction, requires each driver to give to the other at least one half of the main traveled portion of the highway, as nearly as possible.
(4) That the trial court's charge to the jury upon the subject of concurring negligence in its relation to the liability of the defendants was so confusing and inconsistent within itself as to constitute reversible error.
(5) That the trial court erred by permitting the plaintiffs to unduly extend testimony concerning the manner in which lumber was loaded on defendant's truck.
(6) That the trial judge unduly participated in the conduct of the trial, and defendants were prejudiced thereby.
We have carefully reviewed the proceedings and testimony before the jury on the trial of this cause. Appellants insist that the evidence fails to show that the driver of the timber truck was guilty of any negligence proximately resulting in the injury complained of, and that it conclusively demonstrates that the negligence of Mrs. Wilcox, former co-defendant and driver of the Mercury station wagon, was the sole proximate cause of the accident. It would serve no useful purpose to set out in this opinion a detailed summary of the facts and circumstances upon which the jury was entitled to conclude, as the verdict indicates it did, that negligence of the defendant driver of the timber truck was at least a contributing proximate cause of the accident. While the evidence is conflicting in some of its material aspects, and while we, *556 if sitting as members of the jury, might have reached a different conclusion, we cannot agree with appellants' contention that the evidence is insufficient to support the verdict, which in view of the conflicting facts was the exclusive province of the jury to resolve. In so holding, we are not unmindful that Jean Blackmon Wilcox, a witness for plaintiffs and driver of the Mercury station wagon, was indicted, tried by jury, and found and adjudged guilty of the crime of manslaughter pursuant to an information or indictment under Section 860.01, Florida Statutes 1961, F.S.A., arising in consequence of the death of the plaintiff minor's father in the subject accident, and that this court has affirmed an appeal taken by Mrs. Wilcox to review that judgment. That statute, however, defines a crime as to which negligence of the person charged with violation thereof has no bearing on the issue of guilt or innocence. For this reason and other compelling rules of law which we do not deem it necessary to elaborate, the criminal prosecution and conviction of Mrs. Wilcox has no bearing upon the issues of this civil proceeding. Appellants' contentions under Point 1 are not well taken.
Appellants' 2nd, 3rd and 4th Points of Law Involved challenge the propriety of certain charges given to the jury, viz.:
(a) Plaintiffs' Charge No. 5

"* * * and now I quote from Section 317.26 of the Florida Statutes which read as follows:
"`Drivers of vehicles proceeding in opposite directions shall pass each other to the right; and upon roadways having width for not more than one line of traffic in each direction, each driver shall give to the other at least one half of the main traveled portion of the roadway, as nearly as possible.'"
(b) Plaintiffs' Charge No. 8

"Now, Section 320.54 of the Florida Statutes provide[s] as follows, and I quote now from that Statute:
"`Each truck driven or propelled or operated over a State road shall be equipped with a mirror located in such position as to show the driver thereof, the approch of vehicles from the rear.'
That is the Statute, the last of the quote from the Statute.
"This Statute is in recognition of the commonly known fact that trucks, being slow moving vehicles, and being limited by law to a less rate of speed than passenger cars, are liable at any and all times to be overtaken and passed by faster moving automobiles, particularly passenger carrying automobiles, and therefore the effect of the Statute is to impose on truck operators the duty of anticipating the approach from their rear, and to enjoin on them the responsibility for avoiding collisions with their trucks when so overtaken, by holding their trucks to the right hand side of the paved portion of the road when being overtaken by automobiles that are in the act of passing such trucks when moving at a slower rate of speed on the highway than other traffic."
(c) The court's charge on concurrent negligence, as follows:
"Inasmuch as the evidence in this case dealt with the operation of the stationwagon being driven by one Jean Blackmon Wilcox, you may be concerned with the effect which her conduct, that is Mrs. Wilcox' conduct, may have upon the proper determination of the issues in this case. As to this phases [sic] of the case, I charge you that it is a general principle of negligence that where an injury results from two separate and distinct acts of negligence committed by different parties *557 operating concurrently, then both are regarded as the proximate cause, and this is true even though one has been more negligent than the other. In other words, if you should find from a preponderance of the evidence, that the driver of the defendant's lumber truck was guilty of some negligence, however slight, which proximately contributed to the accident and resulting injury to the minor plaintiff, then your verdict should be in favor of the plaintiffs. Notwithstanding that you may may further find that Mrs. Wilcox may, also, have been guilty of even more negligence which proximately contributed to the accident, for in such instance, the right of the plaintiffs to recover against the defendants, Crews and Severance, will not be destroyed by your finding that Mrs. Wilcox' negligence contributed in a greater or lesser degree to the accident and injury in question than did the negligence, if any, of the driver of the defendant's lumber truck. This is so because where several causes combine to concurrently help to produce or bring about an injury, each is an efficient proximate cause without which the accident would not have happened. Then, the accident may be attributed to all or any one of the causes and recovery may be had against any or all of the responsible persons, although one was more culpable than the other. Each wrongdoer is liable as though his act was the sole cause of the accident and resulting injury. However, you should understand such rule applies only in such case you find the negligence of both drivers contributed in some appreciable amount to the proximate cause of the accident, for if you should find from the preponderance of the evidence, that the sole proximate cause of the accident was due only to the negligence of the driver of the stationwagon, Mrs. Wilcox, then in such latter event, you should find the defendants not guilty, and accordingly return a verdict in favor of the defendants."
It is seen that the first charge complained of, "(a)" supra, was limited to a reading of Section 317.26, Florida Statutes, F.S.A. While the facts of this case are such that this charge, which was requested by plaintiffs, might have been omitted without prejudice to their case, it is not inherently prejudicial and, considering the charges as a whole, its inclusion does not constitute material error.
The second charge complained of derives from Section 320.54, Florida Statutes 1961, F.S.A., and is pertinent to the issue of fact before the jury. The court's interpretation of the statute is consistent with that of the Florida Supreme Court in Muse v. Kaler Bros., 120 Fla. 221, 162 So. 507 (1935); Scott v. Stone, 129 Fla. 784, 176 So. 852 (1937); and Myrick v. Griffin, 146 Fla. 148, 200 So. 383 (1941). Immediately after giving that charge, the court charged the jury with respect to the duty of the following or overtaking driver, quoting Sections 317.26 and 317.27, Florida Statutes 1961, F.S.A.
Appellants' attack upon the charge concerning the effect of negligence of a third party as a contributing proximate cause of the injury complained of, "(c)" supra, is addressed primarily to the form of the charge as given rather than to the fact that under the circumstances of this case a proper charge on that subject was appropriate. Appellants complain of the fact that by said charge the jury was instructed that if it found from a preponderance of the evidence that the driver of defendant's lumber truck was guilty of some negligence, "however slight," proximately contributing to the accident, a verdict should be returned for the plaintiffs. The contention is unsound. The plaintiff minor sought only to recover for bodily injuries and there was no issue of contributory negligence on his part. The derivative action *558 of the co-plaintiff, his mother, was to recover for moneys expended and to be expended by her for the treatment of his injuries, and for the loss of his services during minority as a result of said injuries. Under such circumstances the liability of the defendants rested on whether or not the driver of the timber truck, appellant Crews, was guilty of any negligence proximately contributing to the accident and resulting damage to plaintiffs, irrespective of any negligence of Mrs. Wilcox in the premises. Nichols v. Rothkopf, 135 Fla. 749, 185 So. 725 (1939). See also, 3 Fla.Jur. (Automobiles and Other Vehicles), Sec. 89, page 557, and authorities there cited.
Appellants insist by Point 5, supra, that the trial court erred in permitting plaintiffs to adduce testimony to the extent reflected by the record as to the manner in which the lumber was loaded and contained on the timber truck. While it appears that the subject was inquired into with much detail, it is undisputed that the truck was loaded by or under the supervision of the defendant driver who had been engaged in such work for a long period of time. The evidence elicited was pertinent, therefore, to the solution of the ultimate question of whether the driver of the timber truck negligently operated the same in the light of all the facts and circumstances, of which the method of loading and type of material being hauled, its weight, etc., were factors entitled to consideration by the jury. We do not feel that the subject was pursued to such extent as to have prejudiced the defendants.
It is finally contended (Point 6) that the trial judge participated in the trial to such an extent as to prejudice the jury adversely to appellants. With admirable courtesy and emphatic sincerity counsel for appellants state their confidence in the integrity, ability, patience, impartiality, and civility of the trial judge. Appellants insist, however, and with due propriety, that he "examined too much and injected himself too often into the trial" in the following particulars:
(a) That the judge prejudiciously questioned Thomas M. Betts, Jr., a witness for plaintiff, who was a trooper with the Florida Highway Patrol and who was an eye witness to and immediately investigated the accident.
We have carefully reviewed the pertinent part of the transcript and conclude that the questioning of this witness by the judge was a proper effort on his part to clarify, for the benefit of all concerned, certain vital facts within the apparent knowledge of said witness and as to which he had somewhat vaguely given prior testimony. The acts of the judge in that particular were permissible and proper.
(b) That the trial judge made prejudicial comments in the course of defendants' cross-examination of Mrs. Wilcox, a witness for plaintiffs.
It appears that counsel for defendants had inquired of this witness: "Do you recall when your deposition was taken on September 12, 1962, mentioning anything about taking  about having ulcers or any stomach trouble?" To which she replied: "Pardon?" And counsel for defendants then said, "Never mind. Let's forget it." At that time counsel for plaintiffs stated to the court: "I think this witness, Your Honor, is entitled to have any question explained to her. I resent the implications and I think he is badgering this witness, Your Honor." The following colloquy then took place:
"THE COURT: I would like, if we are going to get into any impeachment testimony that we have some impeachment testimony and not just reiteration of what has already been testified to.
"MR. MONTGOMERY [counsel for defendants]: Well, Your Honor, this is cross examination. I intend to go into some repetition testimony unless I am cut off.

*559 "THE COURT: There is no use in doing repetition testimony  I cannot see any reason.
"MR. MONTGOMERY: As I understand the law, there has to be a predicate and a foundation before impeachment can be laid, and that is exactly what I have been trying to do and exactly what I have been doing up to now. Unless you are going to foreclose me.
"THE COURT: As I say, if you have inconsistent statements you are entitled to bring them in and to introduce them, but if they aren't, let's leave them out.
"MR. COX [counsel for plaintiffs]: Your Honor, I object further to the reading extensively from prior testimony under the guise of impeachment when obviously all he is doing is bringing out piddling stuff that doesn't make a bit of difference. He has not impeached this witness. He is erroneously crossing the witness under the guise of trying to get to the jury.
"THE COURT: We have plenty of time to listen to all real impeachment testimony that you have got, but we haven't got any inclination to stay here and rehash repetition of what has been going on and already testified to, so I have no idea what you are going to ask when you go into it.
"MR. MONTGOMERY: I was trying to get on to something new.
"THE COURT: If you get into something impeaching, you can take all the time that you need, but I do dislike getting into these things that don't amount to anything.
"MR. MONTGOMERY: Yes, sir, but I believe they amount to something, Your Honor. That is a matter that would be the jury's province and not the Court's, if the Court please.
"THE COURT: If you want to submit them I will rule on them as fast as you bring them up."
A careful review of the record in context with the above colloquy compels the conclusion that the above remarks of the judge were not prejudicial or improper under the circumstances; that they were pertinent and judicially proper to the situation developed by the cross-examination as to which they were addressed.
(c) Appellants also complain of the trial judge's remarks occurring as follows in the course of the direct examination of defendant Charles Severance by Mr. Montgomery, of counsel for defendants:
"Question: Could you tell us what the substance in the liquor bottle that you smelled, smelled like, what you know as liquor?
"Answer: May I explain it in a way that I can answer your question? I got members of my family.
"THE COURT: If you are going to talk about what other people tell you, they are not here to be cross examined.
"MR. MONTGOMERY: He is not going to say anything, what anybody told him.
"MR. COX [counsel for plaintiffs]: I hope not.
"THE WITNESS: It smells like the brand some of my people * * * that some of my people drank and that is what I was trying to say.
"THE COURT: Now, wait a minute. I believe you said you didn't drink?
"THE WITNESS: No, sir, I do not drink.
"THE COURT: I don't know if he is qualified to tell us about it or not.
"MR. COX: I don't think so.

*560 "BY MR. MONTGOMERY:
"Question: Do people in your family take a drink?
"Answer: Yes, sir.
"THE COURT: I don't think he is qualified to tell us about this subject. It is going to be based on some hearsay. Now you are trying to get in some hearsay.
"MR. MONTGOMERY: I am not trying * * *
"THE COURT: Let's drag this to a stop right now. I think we have gone far enough on that subject.
"BY MR. MONTGOMERY:
"Question: You have smelled liquor before?
"Answer: Yes sir.
"THE COURT: That you know to be liquor?
"THE WITNESS: Yes, sir.
"THE COURT: Or somebody told you was liquor?
"THE WITNESS: I knew it was liquor."
The remarks of the judge in the above context do not constitute prejudicial error.
(d) Appellants further contend that the questions and remarks of the trial judge in the following context during the cross-examination of Pauline E. Davids, a witness for defendants, are prejudicial and require reversal:
"BY MR. COX [counsel for plaintiffs]:
"Question: Mrs. Davids, that is about right at the right wheel of the tractor-trailer?
"Answer: That is approximately * * she cut real close.
"Question: She came very close around the rear?
"THE COURT: I would like to say * * * She said that it knocked the trailer. Let's see how it knocked the trailer. I believe in your earlier testimony you said it knocked the trailer when she made the initial contact. Show how it knocked the trailer.
"THE WITNESS: The trailer swayed to the right when she hit it.
"THE COURT: Show us how she did it.
"THE WITNESS: When she came around and hit it, the trailer swayed.
"THE COURT: All right.
"MR. MONTGOMERY [counsel for defendants]: May Mrs. Davids be excused?
"THE COURT: Just the trailer, not the tractor?
"THE WITNESS: As far as I know, sir, just the trailer.
"THE COURT: Well, how much did it sway * * * give us an estimate in inches, or feet.
"THE WITNESS: I don't believe I could do it, because really I am not that good on something like that. Like I told you, after I saw the stationwagon hit the trailer, I immediately busied myself with parking my car.
"THE COURT: Well, of course, when you say it swayed, you saw something move?
"THE WITNESS: In other words, the trailer was going straight down the highway, and when she hit it, naturally it threw the trailer off balance.
"THE COURT: I am not talking about anything naturally that may have happened in other cases, I want to know what you saw.

*561 "THE WITNESS: Well, that is what I saw, sir.
"THE COURT: Well, estimate the distance that it moved to the left or right.
"MR. MONTGOMERY: Your Honor, you are arguing with the witness, and I object to it. She said she was no good in feet or distances; and further, on the record, I make objection to it here.
"THE COURT: I am giving her one more chance to enlighten us. * * * I would just like to know what you saw, and this is all I want to know.
"THE WITNESS: Well, I saw, sir, but I didn't * * * I mean, as far as giving you distance or an estimate in feet or something like that, I don't believe I could do that and do it right.
"THE COURT: What I am getting at is when you tell me it swayed, I don't know whether it swayed a little or a lot; and I want to know whether it swayed inches or whether it swayed a foot?
"THE WITNESS: I would say it swayed more than inches.
"THE COURT: You showed how the stationwagon was swaying * * * the amount it swayed by moving the model vehicle there. Now, I just want to know by the same comparison how much did the trailer sway?
"THE WITNESS: Well, I would say a few feet, sir.
"THE COURT: All right."
As has often been said, an appellate court cannot recreate the stage or settings of the drama enacted before the trial judge. It deals with the cold record, and in so doing accords to the trial judge's actions a full and complete attitude of fairness and impartiality, upon which rests the very foundation of our system of jurisprudence and the concept of justice under the law. When confronted with excerpts from that cold record, as in the case on review, for the purpose of demonstrating error on the ground that the trial judge unduly participated in certain phases of the trial  that his acts were not impartial and therefore prejudicial  the acts complained of must be viewed in the light of the entire record and with due awareness of the fact that he was in a peculiarly advantageous position to observe the nuances and implications of all that transpired; that his was the delicate and important responsibility of reducing the extremes of the tensions and voids of the drama to as temperate a norm as the circumstances would permit. To that end a trial judge must be and he is vested with the duty and broad power to do those things reasonably necessary to insure the integrity of the trial over which he presides. In pursuit of this objective he may elicit from the witnesses such testimony as he may reasonably deem proper in order to acquaint the jury with such facts as are calculated to aid in resolving the issues, and to make such inquiry as may lead to the truth or a better understanding of it. Generally, it is his duty to so control the orderly processes and progress of the cause over which he presides that justice under the law may prevail.
One who challenges a judgment or decree on the ground that acts of the trial judge prejudiced a fair and impartial trial assumes the heavy burden not only of showing the commission of an act that is inherently or under the peculiar circumstances of the case clearly of a nature prejudicial to his rights, but also of demonstrating that the act complained of produced a prejudicial effect. An adverse verdict standing alone, though an essential factor, is not conclusive evidence of the prejudice here asserted. The act complained of must be such as to produce a compelling inference that had it not occurred the jury would have returned a verdict more favorable to *562 the aggrieved party. Testing the remarks and acts of the trial judge in this case by what we have said, according to him that judicial temperament which the appellants confess he normally is endowed with, and finding nothing in the record reflecting such a departure from that conduct as to prejudice the result of the trial to the detriment of appellants, we hold that appellants' Point 6 is not well taken.
Finding no error, the judgment appealed is
Affirmed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.