ROBERTS, Justice
(dissenting).
This cause is before the court on petition for certiorari to review a decision of •the District Court of Appeal, First District, affirming without opinion a verdict .and judgment convicting the petitioner of the offense of manslaughter defined and •denounced in Section 860.01, Fla.Stat, F. :S.A., as follows:
“ * * * if the death of any human being be cause by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter * *
Jurisdiction of this court to review the ;appellate decision is invoked under the “direct conflict” provision of Section 4, Article V, Fla.Const., F.S.A.
The facts, as shown by the record proper, -are as follows: The defendant was indicted by the Grand Jury of Columbia County for manslaughter for causing the death of one William James Warren. The indictment was in two counts, the first charging 'her with manslaughter by culpable negligence in the operation of a motor vehicle, :and the second charging her with the same offense by the operation of a motor vehicle while intoxicated. We are here concerned, Tiowever, only with the second count, since she was found guilty only on that count — thereby exonerating her of the culpable negligence charged against her in the first count of the indictment. See Smith v. State, Fla.1953, 65 So.2d 303; Day v. State, Fla.App.1963, 154 So.2d 340.
The second count of the indictment upon •which she was convicted — and sentenced to :a term of ten years in the state prison— •charged, in substance, that defendant was •driving a Mercury station wagon in an •easterly direction upon a public highway; that one Joseph Mallory Crews was properly driving and operating a White tractor-trailer in the same direction; that the deceased, William James Warren, was riding and travelling in a Chevrolet panel truck in the opposite direction; and that the defendant, while intoxicated, caused the Mercury station wagon to collide with the White tractor-trailer, and thereby caused the White tractor-trailer to collide with the Chevrolet panel truck, thus inflicting upon the deceased the injuries from which he died.
As noted, defendant was tried and convicted in the Circuit Court of Columbia County of manslaughter as charged in the second count of the indictment. In the meantime, a civil action for damages arising out of the same accident had been brought in the Circuit Court of Duval County against Joseph Mallory Crews, as the driver, and Severance Truck Lines, as the owner, of the White tractor-trailer which collided with the Chevrolet panel truck. The suit was brought by the deceased’s minor child, who was a passenger in the Chevrolet panel truck being driven by his father, to recover for his injuries sustained as a result of the collision with the White tractor-trailer, joined by his mother to recover her derivative damages, such as medical expense. The cause was tried and a verdict in 'favor of both plaintiffs was returned against both defendants by the jury — $80,000.00 being awarded to the child and $8,000.00 to the mother.
The verdict and judgment in the civil action in Duval County were entered subsequent to the verdict and judgment against the defendant in the criminal action in Columbia County, and during the pendency of her appeal to the District Court oí Appeal, First District, from the judgment of conviction. She thereupon filed, through her attorney, a verified motion requesting the appellate court to relinquish jurisdiction to the trial court so that she could file in that court an “Extraordinary Motion for New Trial”. In her petition to the appellate court, to which was attached her pro *886 posed “Extraordinary Motion for New Trial” and the judgment in the civil action for damages entered in the Duval County Court, the facts recounted above were set out as a basis for defendant’s contention that, had the vital fact of the truck driver’s negligence been known at the time of the criminal trial, it would have put an entirely different light upon the question of whether the defendant’s alleged driving while intoxicated had caused the death of the deceased. Her motion could have been treated as an application to apply to the trial court for a writ of error coram nobis and was adequate for that purpose. See Ex parte Welles, Fla.1951, 53 So.2d 708.
There was thus squarely presented to the appellate court the question of whether a person can lawfully be convicted of manslaughter when it affirmatively appears, from the indictment itself, that the accused did not perform the act from which the death of the deceased directly resulted, and when it is judicially determined that the person who, in effect, wielded the fatal blow (the driver of the White tractor-trailer with which the panel truck driven by the deceased collided) has committed an act or been guilty of negligence which has operated as an efficient proximate cause of the fatal accident. In denying the defendant’s motion, the appellate court gave no reason therefor; its denial operates, however, as an affirmative answer to the question presented to it. This is, in our opinion, in direct conflict with the decisions of this court referred to hereafter.
The statute, Section 860.01, supra, denouncing the offense of which the defendant was found guilty requires that the death “be caused by the operation of a motor vehicle by any person while intoxicated * * (Italics supplied.) If the word “caused” is interpreted as meaning the physical cause of the death, as distinguished from the legal responsibility for such death, then such holding of the appellate court is in direct conflict with the language of the statute itself, and with the general rules respecting homicidal acts— that is, that one may be found guilty of an unlawful homicide only if the act resulting in death is actually or constructively that of the accused. See 26 Am. Jur., Homicide, Sec. 54, p. 196. In automobile death cases, the death is constructively that of the accused where he, as the owner of the car, turns it over to an intoxicated person to drive, knowing of the intoxication of the driver, see Taylor v. State, Fla. 1955, 83 So.2d 879; or turns it over to another and sits by his side while the driver operates the car in a culpably negligent manner, see Story v. United States, 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246, quoted with approval in the Taylor case, supra. But we have found no case, and none has been cited, where an accused has been held guilty of involuntary manslaughter arising from the operation of an automobile while intoxicated where the automobile driven by the accused, or under his control, was only remotely involved with the death of the deceased and did not actually collide with the victim or the vehicle in which the victim was riding. Cf. State v. Verrill (1921) 120 Me. 41, 112 A. 673, in which a statute making it an offense to leave the scene of an accident after “causing” injury to another was interpreted as meaning the direct physical cause of the accident, as distinguished from the legal responsibility therefor.
But even if it be assumed, for the purpose of argument, that the Legislature intended to fasten criminal responsibility for the homicidal act denounced by Section 860.01, supra, under the rules governing civil liability for injury or death of a person, then the holding of the appellate court referred to above is in direct conflict with the well settled rule in this jurisdiction respecting the meaning of “proximate cause”.
It has long been held by this court that the proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. Woodbury v. Tampa Water Works Co., *887 1909, 57 Fla. 243, 49 So. 556, 21 L.R.A., N.S., 1034. Where an independent force or act intervenes to bring about a result that the defendant’s act would not otherwise have produced, the defendant is liable only where the intervening force or act was reasonably foreseeable. Rawls v. Ziegler, Fla. 1958, 107 So.2d 601. Ordinarily, no one is required to anticipate that another will be negligent, see General Telephone Company of Fla. v. Mahr, Fla.App. 1963, 153 So.2d 13; and even where, in special circumstances, it could be found that the intervening negligence could reasonably have been foreseen, the question of “foreseeability” is for the jury to determine under appropriate instructions from the court. See Savarese v. Hill, Fla.App.3d 1961, 128 So.2d 775; cf. Railway Express Agency v. Erabham, Fla.1953, 62 So.2d 713.
In assuming jurisdiction of the petition for certiorari on the . “direct conflict” ■grounds noted above, it is appropriate to note that we will, at the same time, be enabled to dissipate the confusion which will, inevitably, result from the decision of the District Court of Appeal, First District, affirming the verdict and judgment in the Duval County Circuit Court civil action referred to above, styled Crews et al. v. Warren et al., opinion filed November 5, 1963, Fla.App.1st, 157 So.2d 553. In holding that the evidence was sufficient to support the finding of the jury that the driver ■of the White tractor-trailer had been guilty ■of negligence which was “at least a contributing proximate cause of the accident”, the appellate court noted that it had theretofore affirmed the conviction of Mrs. Wilcox (the defendant here) for manslaughter arising in consequence of the death of the plaintiff minor’s father in the subject accident, but that her conviction had no bearing on the issues in the civil proceeding since the statute under which she was convicted “defines a crime as to which negligence of the person charged with violation thereof has no bearing on the issue of guilt or innocence.” It can thus be seen that, by this decision, the First District Court of Appeal has affirmed on the record of the jurisprudence of this state the fact that, in its opinion, a person can be found guilty of manslaughter regardless of the fact that the act which is the direct physical cause of the fatal accident is not that of the accused but of another person whose negligence has been judicially found to be a proximate efficient cause thereof.
Having jurisdiction of the cause because of the “direct conflict” apparent on the face of the “record proper”, it is appropriate for this court to examine the entire record to determine whether other errors exist which should be correct on a retrial of the cause. An examination of the entire record reveals clearly the rank injustice which will be done to the defendant if this conviction is allowed to stand.
The undisputed evidence shows that the defendant, while driving a borrowed Mercury station wagon, attempted to pass the White tractor-trailer, which was loaded with lumber, on a four-lane (with a median between the two roadways for opposite traffic) portion of the highway just before it narrowed into a two-lane highway. This four-lane portion had just been completed and there were no markings of any kind to indicate that the four-lane portion would shortly end, nor was there a yellow line in the center of the highway to indicate that passing was dangerous and forbidden. The defendant’s Mercury station wagon came alongside the lumber truck just as it “bottle-necked” into the two-lane highway and side-swiped it, causing the lumber truck to jack-knife. The lumber truck came to rest some distance from the point of impact, partly on the highway and partly on the shoulder of the road. The lumber on the tractor-trailer was not dislodged by the impact of the defendant’s car; however, the Chevrolet panel truck being driven by the deceased in the opposite direction collided with the White tractor-trailer, and the force of that impact caused the lumber to become dislodged and fall over onto the Chevrolet truck, killing the driver and seriously injuring his minor child.
*888 There was evidence from which the jury could have concluded that the driver of the Chevrolet panel truck could have stopped in time to avoid the collision with the lumber truck, had he been exercising’ due care. And it appears, from what was said in Crews v. Warren, Fla.App.1st, 157 So.2d 553, affirming the verdict and judgment in the Duval County civil action for damages referred to above, that one of the acts of negligence charged against the driver of the lumber truck was the manner in which the lumber was loaded on the truck.
In these circumstances, it could almost be said, as a matter of law, that while the operation of the motor vehicle by the defendant provided the occasion for the fatal accident, it was not the proximate cause thereof. See General Telephone Company of Fla. v. Mahr, Fla.App.2d 1963, 153 So. 13; Seaboard Airline Ry. v. Mullin, 70 Fla. 450, 70 So. 467, L.R.A.1916D, 982. In the latter case this court said:
“If an independent efficient cause intervenes between the negligence and the injury, and the original negligence does not directly contribute to the force or effectiveness of the intervening cause, the original negligence is not regarded as a proximate cause of the injury, even though the injury might not have occurred but for the original negligence. A proximate cause stands next in causal relation to the effect.”
If the mere fact of driving while intoxicated requires the intoxicated person to be held answerable for the death of a person if he has any connection therewith whatsoever, no matter how remote, and regardless of the efficient intervening acts which, in fact, are physically and legally responsible for the death, when measured by the rules of law applicable to “proximate cause”, then the Legislature should specifically so enact. It has not, in our opinion, done so in providing, in Section 860.01, that the death shall be caused by the operation of a motor vehicle by a person while intoxicated.
As to the evidence of the defendant’s intoxication, it was inconclusive, to say the least. There was testimony that the Mercury station wagon was “weaving” as she drove it prior to the accident. This was-rebutted by testimony that it was a borrowed car whiclj she was unaccustomed to-driving, and by the testimony of a highway patrolman who stopped her about a half an hour before the accident occurred, just twelve or fifteen miles from the point where-it occurred because of such weaving. He had an opportunity to observe her actions as she got out of the car and talked to him. He (the highway patrolman) testified that she walked and talked all right, although she appeared to be tired, and he allozved her to proceed. The only other testimony as to her condition was by witnesses who observed her after the accident, in which she sustained a blow on her head. Although it was shown that she had the odor of some kind of alcohol on her breath (she testified that she had a beer when she stopped for gasoline some time before), it is just as reasonable to infer that her slurred speech and' abnormal appearance could have been caused by the blow on her head sustained in the accident as by the consumption of alcohol — in fact, even more reasonable. The last person to have talked with the defendant before the accident was the highway patrolman, whose duty it was to ascertain whether the defendant was in a fit and proper condition to drive on the public highway. Not only is the officer presumed to have done his duty in this respect;- it is inconceivable that he would have allowed her to drive on if he had had the slightest indication that she was intoxicated.
This court is committed to the rule that, “When the state relies on circumstantial' evidence, the circumstances, when taken together, must be of a conclusive nature and tendency, leading, on the whole, to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be *889 consistent with, guilt. They must be inconsistent with innocence.” Frank v. State, 1935, 121 Fla. 53, 163 So. 223. The defendant requested several charges to the jury to this effect, all of which were denied by the court. This was, in my opinion, such fundamental error as to require a reversal of the judgment of conviction and a new trial; and the appellate court’s refusal to do so is in direct conflict with the decision of this court in Frank v. State, supra, 163 So. 223. See also Fowlkes v. State, Fla.App.3d, 1957, 100 So.2d 826.
I have also considered the defendant’s contentions with respect to the refusal of the trial judge to charge on the “last clear chance” of the deceased to avoid the accident. As the requested charge was phrased, and under the evidence presented at the trial, we can find no error here. Although the negligence of the intoxicated driver who is indicted for manslaughter, and the contributory negligence of the deceased, have been said not to be involved in a prosecution for such offense, see Roddenberry v. State, 1942, 152 Fla. 197, 11 So.2d 582, and Lemming v. State, Fla.App.2nd 1964, 159 So.2d 486, it would seem that neglect by the deceased person of fundamental rules for his own safety could be shown, with other circumstances, to rebut the charge — essential to the State’s case— that the death of the victim was caused by the operation of a motor vehicle by a person while intoxicated. Cf. Russ v. State (1939) 140 Fla. 217, 191 So. 296. And under the circumstances shown by this record, as recounted above, it seems clear that a charge on “proximate cause” on this aspect of the evidence should be given to the jury for its guidance in reaching a verdict, should this case be retried by the State.
Significant also, is the language of this court in the case of Smith v. State, Fla., 65 So.2d 303, supra, in which it said:
“It is unlawful to drive a car while ‘under the influence of intoxicating liquors’ but it is not manslaughter if one in such condition runs into and kills another unless ‘culpable negligence’ is shown. We have held that ‘testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless.’ Taylor v. State, Fla., 46 So.2d 725. Such evidence, however, cannot make an act wanton and reckless that was not otherwise so. It is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed.”
It is unfortunate that the District Court of Appeal did not give us the benefit of their views in an opinion, although an opinion was authored in a civil case growing out of the same collision. It is even more unfortunate that a majority of this court has determined we are without jurisdiction to review the case on its merits, notwithstanding the harmful errors hereinabove set forth. It is of little comfort to the petitioner, now under a ten-year sentence, to say that, because of a jurisdictional failure, the merits of the case must, as a matter of law, go without review here. We are fortunate, however, that the architects of our organic law in this state made provision for a Board of Pardons to relieve against such manifest injustices.
For the reasons hereinabove stated, I respectfully dissent and would take jurisdiction and quash the judgment of the District Court and direct a re-trial of the case.
HOBSON (Ret.), J., concurs.