RAWLS, Judge.
The plaintiff, who suffered severe bodily injuries in an automobile accident, appeals from a final judgment for defendants entered pursuant to a directed verdict in this negligence action.
Plaintiff’s sole point going to the merits of the cause questions the propriety of the *634 action of the trial judge in granting the directed verdict, it being her contention that she presented an issue of negligence that should have been resolved by the jury rather than by the actions of the trial judge in directing a verdict as a matter of law.
The pertinent facts are:
At about 4:45 P.M. on the day of the accident five automobiles were proceeding westerly in a drizzling rain on a two-lane public highway. The leading car came to a stop in the westbound lane of traffic to permit approaching traffic to clear so that it could negotiate a left turn. The next two cars in line stopped without incident in the same lane of traffic behind the leading car. The fourth car in line was occupied by the defendants, Mr. and Mrs. Harrell, and was driven by Mrs. Harrell who stopped her car on the right shoulder of the road. The fifth car was being driven by plaintiff’s husband, James Jackson, who ran into the rear of the third car, owned and being driven by James F. Wells. The impact damaged all cars except the Harrell’s Oldsmobile.
Wells, driver of the third car, testified that he was driving about 50 miles per hour when he saw the brake lights of the car he was following; he applied his brakes, glanced in his rear view mirror, and saw the Harrell auto swerve slightly in the lane, apparently caused by applying brakes; that he did not see the Harrell car turn off the road nor a right turn signal flashing but he did not again look into his rear view mirror; that he stopped his own car a few feet behind the second car without sliding or skidding; and that the collision occurred instantaneously.
The Harrells were called as adverse witnesses. Mrs. Harrell testified that when the brake lights appeared on the Wells car, she put on her brakes. Mr. Harrell told her to “watch out” and because the pavement was wet he told his wife to pull off on the shoulder. She said she braked the car, put on her right turn indicator, pulled' off on the shoulder at about 10 miles per hour, and without sliding or skidding came to a stop on the shoulder with the front of the Oldsmobile slightly behind the rear of the Wells Plymouth; and about 20 or 30 seconds after they came to a stop, they heard the Jackson car passing them, and it crashed into the Wells car. At the trial! when Mr. Harrell was asked how far away they were from the Wells stopped car when he first realized that it was stopped, he answered, “5 car lengths.” In his pretrial statement he had answered the same question, “30 feet,” and in her pretrial statement Mrs. Harrell answered the same question, “30 yards.”
Mr. Jackson, a lawyer, testified in substance that the road had a slow curve but was straight, level and wet for one-fourth of a mile prior to the accident; that he had seen the two road signs warning motorists that the road was slippery when wet; that he had been following the Harrell Oldsmobile since he left Oldtown at a speed of 45 to 50 miles per hour about 4 or 5 car lengths to its rear; that he knew a car length was about 20 feet; and that at no> time had he observed the vehicles in front of the Harrell’s car. When asked if he had looked for any, he answered, “I was looking at the Oldsmobile.” The rear window was misty and he could not determine whether a man or woman was driving. He testified the Oldsmobile was traveling about the same speed as he was; that it dodged or turned to the right shoulder of the road at about a 45 degree angle without giving any signal until the Oldsmobile’s red brake lights came on while it was leaving the road; that at that point the Oldsmobile was as close to the Wells car as it could be without hitting it; and that at the time of that maneuver Jackson stated he was still 4 or 5 car lengths (80 to 100 feet) behind the Harrell Oldsmobile, but he was about three car lengths (60 feet) behind the Wells-Plymouth when he realized it was stopped on the road. He then thought of going into-the left lane, and turned to the left, but he *635 ■saw another car coming toward him too fast to allow him time to cross to the left shoulder. He had his brakes depressed about lialf way or more, and after turning back into his own lane, he put them on hard. His wheels did not lock. He hit the Wells •car while traveling at a speed of about 25 miles per hour.
At this point we view and summarize the evidence in a light most favorable for the plaintiff which we must do by reason of the directed verdict. The Wells, Harrell and Jackson cars were traveling about the same speed on the same wet, slippery, straight, level road. The Harrell and Jackson cars were maintaining the same ■distance behind the cars preceding them. The Wells car braked and came to a stop on the wet slippery pavement without skidding or sliding. The Harrell car, which "had been traveling 45 to 50 miles per hour, decelerated without application of the brakes until it suddenly turned onto the ■shoulder of the road at a 45 degree angle while in close proximity to the Wells car (about 30 feet) and came to a stop to the right of and slightly forward of the Wells ■car without skidding or sliding. Jackson was cognizant only of the Harrell car. When the Harrell car was at a point from which it could safely execute the maneuver ■of driving off the highway and onto the •shoulder, at which time it was giving a •signal, Jackson was still 4 or 5 car lengths (80 to 100) feet to the rear of the Harrell ■car which at that point was 30 feet from the Wells car. It was not until Jackson was 3 car lengths (60 feet) to the rear of the stopped Wells car that he realized it was ■stopped in the road, and then he began his maneuver. Not being aware of the oncoming traffic, he pulled over to the left but saw an approaching car so close to him and traveling too fast for him to safely traverse the width of the left lane. He pulled back into the right lane and attempted to stop his car.
It is elemental that a motion for directed verdict should be granted only if the jury could not, under any view of the evidence, lawfully find for the plaintiff who at that stage is entitled to every favorable inference arising from the evidence.[1]
The question resolved by the trial judge was whether there was any evidence upon which the jury could have inferred that defendant was guilty of some negligence proximately contributing to the accident.[2] Although Mr. Jackson’s negligence may not be imputed to his passenger, his negligence is important in determining the proximate cause of the accident.
We are unable to ascertain any proof proffered by plaintiff indicating negligence on the part of the defendant which can be said to have proximately contributed to defendant’s accident. The evidence is uncontradicted that the Harrell car did not slide or skid on the slippery pavement or wet shoulder. There is no evidence of a sudden decrease of speed without an appropriate signal.[3] Plaintiff admits that Mrs. Harrell’s brake lights were operative and were burning when she pulled off the pavement. She admits that Mrs. Harrell successfully maneuvered her car to a place of safety on the right shoulder of the road. Her witness, Mr. Jackson, testified that at the time the Harrell car suddenly pulled off the road at a high rate of speed with brake lights on when only 30 feet to the rear of the stopped Wells car, he was 80 to 100 feet to the rear of the Harrell car. That would *636 place the plaintiff at that time 130 to ISO feet away from the stopped Wells car and the Harrell car only 30 feet from the stopped car. The substance of Mrs. Jackson’s contention is that the Harrell car did stop within a maximum of 70 feet, but that twice that distance was inadequate warning for her driver to safely stop. If a jury of reasonable men could have believed that it was possible for an automobile to perform the “maneuver” which the plaintiff claims Mrs. Harrell performed, then the jury could reach only one conclusion' — that Mr. Jackson had adequate warning and that the sole proximate cause of the accident was his negligence in not being aware of the existing traffic and in driving too fast and following too closely under the existing conditions.
Appellant’s final contention is that Mrs. Harrell was negligent in changing her course without giving the proper signal. Subsections 317.291(2) and (3), Florida Statutes, F.S.A., read:
“(2) No vehicle shall be driven from a direct course in any lane on any highway until the driver shall have determined that the vehicle is not being approached or passed by any other vehicle in the lane or on the side to which the driver desires to move, that the move can be completely made with safety and without interfering with the safe operation of any vehicle approaching from the same direction.
“(3) The driver of any vehicle overtaking or passing any other vehicle or changing lanes or course shall prior to such overtaking, passing, or changing, give the appropriate signal as may be required by law, provided however that the giving of such signal shall not give the signaling driver any right of way.”
It has been held that a sudden changing of lanes is negligence “ * * * when it puts another in a position of peril.”[4] Even though Mrs. Harrell' didn’t change lanes but drove off the road instead, the principle-would still be applicable had Mrs. Harrell’s, change of course put Mr. Jackson in a position of peril. Here her change of course put no one in peril but only revealed the peril already existing. Even conceding that she was negligent in failing to give a right turn signal, such negligence did not contribute to the proximate cause of the accident. Her changing of course at a point 80 to 100 feet ahead of plaintiff did not in any way interfere with Mr. Jackson’s use of the highway. On the contrary it gave him an additional 20 feet in which to stop.
We conclude that the able trial judge correctly directed a verdict for defendant.
Affirmed.
WIGGINTON, J., concurs.
STURGIS, Chief Judge, dissents.

. Burkett v. Belk-Lindsey Co., 137 So. 2d 266 (Fla.App.2d 1962); Budgen v. Brady, 103 So.2d 672 (Fla.App.1st 1958); and Chilton v. Dockstader, 126 So.2d 281 (Fla.App.2d 1961).

. Crews v. Warren, 157 So.2d 553, (Fla. App.1st., 1963).

.§ 317.371(3) reads: “No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear, when there is opportunity to give such signal.”

. Gertler v. Peterson, 116 So.2d 778, 779 (Fla.App.3rd, 1960).